UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
ALEXANDRIA DIVISION

| | | |
|---|---|---|
| **SYLVESTER BOWIE** | : | **CASE NO. 1:22-CV-04071** |
| **VERSUS** | : | **JUDGE DONALD E. WALTER** |
| **SHELTER MUTUAL INSURANCE CO., ET AL** | : | **MAGISTRATE JUDGE KAY** |

## REPORT AND RECOMMENDATION

Before the court is a Motion for Leave to File Intervention Complaint, filed by McClenny Moseley & Associates law firm ("MMA"), former counsel of record for plaintiff Sylvester Bowie. Doc. 22. The Motion is opposed by plaintiff Sylvester Bowie. Docs. 24, 31. The motion was referred to the undersigned for resolution.

Having considered the arguments raised in brief and at hearing, it is **RECOMMENDED** that the motion be **DENIED**.

### I.
#### BACKGROUND

Attorneys associated with MMA caused to be filed approximately 1,600 lawsuits in the Western District of Louisiana in 2022, most just prior to the prescriptive date for claims related to Hurricane Laura, which impacted the Southwest Louisiana area in August of 2020. These "MMA Cases" asserted claims for damages related to Hurricanes Laura and Delta, which made landfall on August 27, 2020, and October 9, 2020, respectively, causing extensive damage to many areas in this district. MMA filed this case on Mr. Bowie's behalf on August 24, 2022. Doc. 1.

The sheer number of MMA cases filed in a very short period caused Judge James D. Cain, Jr., to take note. Early review of the cases by the court raised multiple issues including duplicate filings, cases filed against insurers who had no policy in place with the plaintiff, and cases filed on behalf of plaintiffs who had already settled their hurricane claims with the insurer. Hearings were held in the Lake Charles Division of the Western District of Louisiana on October 20 and December 13, 2022, at which Judge Cain reviewed submissions by MMA attorneys, testimony from several MMA clients, and others. Doc. 6.[1]

On October 21, 2022, Judge Cain issued an order staying all MMA Cases pending further review. Doc. 5. The Commissioner of the Louisiana Department of Insurance issued a cease and desist order to MMA on February 17, 2023, having concluded that the firm was in violation of multiple provisions of the Insurance Code. On March 4, 2023, Judge Cain issued an order temporarily suspending MMA and anyone affiliated with the firm—including attorneys R. William Huye, III, Claude Favrot Reynaud, III, Cameron Sean Snowden, Grant P. Gardner, John Zachary Moseley, and James McClenny—from practice in the Western District of Louisiana. Doc. 17. In other MMA cases where new counsel had not yet sought to enroll, former MMA attorney R. William Huye, III, successfully moved the court on March 30, 2023, to lift the stay to allow him to withdraw as counsel due to the Louisiana Supreme Court's order suspending him from the practice of law on an interim basis. *See, e.g.*, *Franks v. Dover Bay Specialty Ins. Co.*, No. 2:22-cv-03495, docs. 12, 14 (W.D. La. 3/30/23). Around the time that Judge Cain temporarily suspended MMA and its affiliates from the practice of law in this district, former MMA attorneys

---

[1] Minutes of the 12/13/2022 hearing were not made part of this proceeding.

Snowden, Reynaud, and Gardiner resigned from MMA, leaving MMA with no attorneys licensed to practice law in Louisiana.[2]

Mr. Bowie terminated MMA following the suspensions and hired new counsel of record, who moved to substitute on March 23, 2023. Docs. 18, 24. This motion by MMA followed.[3]

## II.
### LAW AND ANALYSIS

In the motion to intervene, MMA seeks to "enforce their lien right for attorneys' fees and out-of-pocket expenses pursuant to La. R.S. 37:218."[4] Doc. 22. MMA asserts that this is an intervention of right under Fed. R. Civ. P. 24(a), and they alternatively seek permissive intervention under Fed. R. Civ. P. 24(b)(1)(B). *Id.*

Defining the property interest it seeks to protect, MMA asserts that Sylvester Bowie and MMA "entered into a written contingency fee agreement pursuant to Louisiana Rules of Professional Conduct rule 1.5(c)" and that this contract gives rise to a lien and privilege in MMA's favor on the proceeds of this matter. MMA claims to have "performed meaningful and substantial

---

[2] *See In re: McClenny Moseley & Associates PLLC*, doc. 3 (2:23-mc-00064-JDC) (Notice of consent of former MMA Counsel to termination of their representation of plaintiffs in all MMA cases pending in the Western District of Louisiana); *In re: McClenny Moseley & Associates PLLC*, No. 3:23-mc-00062-JDC, doc. 35, p. 34:17-24; 82:9--17, Official Transcript (W.D. La. 8/11/23).

[3] Before plaintiff opposed the motion to intervene, counsel who filed the motion on MMA's behalf moved to withdraw as counsel of record. Doc. 23. After a hearing on the motion, the court ordered plaintiff to file an affidavit into the record and ordered MMA to provide plaintiff's file materials to the court and his current counsel of record. Doc. 29. Thereafter, plaintiff and MMA supplemented the record as instructed. Docs. 30, 31.

[4] Insofar as this is an action by Louisiana homeowners filed in a federal court sitting in Louisiana under Louisiana law, MMA moves to enforce its lien rights under La. R.S. § 37:218, a Louisiana statute allowing an attorney to acquire as his fee a lien right in the interest of the subject matter of the suit. The court's analysis is therefore limited to whether MMA has any protectable interest under Louisiana law. *But cf., e.g., Cheatham v. Pohl*, No. 01-20-00046-CV, 2022 WL 3720139, at *7 (Tex. App. Aug. 30, 2022) (discussing potential extraterritorial reach of Texas anti-barratry statute and determining that the anti-barratry statute applies to Texas lawyers if the prohibited acts take place in Texas, regardless of the location of the clients or runner).

legal work for the client on the matter for which they are entitled to a quantum meruit recovery in an amount to be proved at trial." Doc. 22, att. 1, p. 3.

### A. MMA must have a legally enforceable interest to intervene under Fed. R. Civ. P. 24.

MMA asserts that it is entitled to intervene in this matter under Fed. R. Civ. P. 24(a)(2). As a party asserting intervention as of right, MMA must satisfy four requirements:

> (1) The application must be timely; (2) the applicant must have an interest relating to the property or transaction that is the subject of the action; (3) the applicant must be so situated that the disposition of the action may, as a practical matter, impair or impede its ability to protect its interest; and (4) the applicant's interest must be inadequately represented by the existing parties to the suit."

*Brumfield v. Dodd*, 749 F.3d 339, 341 (5th Cir. 2014) (quoting *Sierra Club v. Espy*, 18 F.3d 1202, 1204-05 (5th Cir. 1994)). As movant, MMA bears the burden of establishing these elements, but the court is to construe Rule 24 liberally. *Id.* "Failure to satisfy any one requirement precludes intervention of right." *Edwards v. City of Houston*, 78 F.3d 983, 999 (5th Cir. 1996).

MMA's intervention request fails as to the second prong, which requires the applicant to have an interest relating to the property or transaction which is the subject of the action. The touchtone of the inquiry is whether the interest alleged is alleged to be "legally protectible." *Brumfield*, 749 F.3d at 343; *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, 732 F.2d 452, 464 (5th Cir. 1984). "An interest is sufficient if it is of the type that the law deems worthy of protection, even if the intervenor does not have an enforceable legal entitlement or would not have standing to pursue her own claim." *Texas v. United States*, 805 F.3d 653, 659 (5th Cir. 2015).

### B. MMA has no legally protectible interest in the lawsuit

MMA has no legally protectible interest in Mr. Bowie's lawsuit. The contingency fee contract between MMA and Mr. Bowie is unenforceable because it violates a rule of public order,

and the gravity of MMA's lapses from sound professional conduct outweigh the value of any services the firm may have provided to Mr. Bowie.

> **1.    The contingency fee contract is null and unenforceable if procured by a modern-day case runner.**

A contract that violates a "rule of public order" is unenforceable under Louisiana law.  "A contract is absolutely null when it violates a rule of public order, as when the object of a contract is illicit or immoral. A contract that is absolutely null may not be confirmed.  Absolute nullity may be invoked by any person or may be declared by the court on its own initiative."  La. Civ. Code. art. 2030.  "'No principle of law is better settled than that a party to an illegal contract or an illegal transaction cannot come into a court of law and ask it to carry out the illegal contract or to enforce rights arising out of the illegal transaction.'" *Vidrine v. Abshire*, 558 So. 2d 288, 292 (La. App. 3 Cir. 1990) (quoting *Bergeron v. Mumphrey*, 38 So. 2d 411, 414 (La. Ct. App. 1949)).

Louisiana has strong public policies against runner-based solicitation of clients, a practice sometimes known as "case running,"[5] and against the practice of law by non-attorneys.  Louisiana law makes it "unlawful for any attorney to pay money or give any other thing of value to any person for the purpose of obtaining representation of any client."  La. R.S. § 37:219(A).  "No person, firm, or entity shall solicit employment for a legal practitioner."  La. R.S. § 37:219(B)(1).  Because "[t]he legal system and the profession suffer actual injury when a lawyer engages in runner-based solicitation, a felony under state law," the Louisiana Supreme Court has confirmed a "strong public policy" against case running.  *In re O'Keefe*, 877 So. 2d 79, 85 (La. 2004). Louisiana law also makes it unlawful for a non-attorney to practice law.  La. R.S. § 37:213.

---

[5] *See, e.g.*, *In re Cuccia*, 752 So. 2d 796, 796 (La. 1999) (concluding that disbarment was appropriate sanction for attorney who admitted to numerous violations of the Louisiana Rules of Professional Conduct, including minimal supervision of employees, neglecting client communications, and paying approximately two dozen "runners" $500 for each personal injury client solicited, and employing nearly a dozen non-attorney staff members to process the 90-100 clients obtained monthly).

Louisiana courts have declared contracts confected in violation of these strong public policies null and unenforceable. A contract to pay a third party for client contacts in violation of the "case running" rule is null and unenforceable. *Vidrine*, 558 So. 2d at 292 (holding that, where defendant was employed to "run" cases for a law firm, the arrangement whereby he received a percentage of the attorney fees for each case he brought in was unenforceable at law). A contingency fee contract between an attorney and client procured via a non-attorney case runner found to have engaged in the unauthorized practice of law was likewise unenforceable. *Gray v. Atkins*, 331 So. 2d 157, 164-66 (La. App. 3 Cir. 1976)(holding that private investigators engaged in the unauthorized practice of law when they advised plaintiff "that she had legal claim" and conspired with attorney to prosecute her claim, such that contingency fee contract between attorney and plaintiff was null and void).

Mr. Bowie attests in his affidavit that he does not recall many of the facts that led to his electronic authorization of a contract with MMA, but that he never received a copy of the contract, and he never spoke with an attorney about filing this lawsuit or the appraisal process. Doc. 31. Combined with what we know from the documentary record, it appears that Mr. Bowie's first point of contact may have been with a third-party marketing firm, Tort Network LLC, d/b/a Velawcity.[6] MMA has previously explained that it obtained signed client retainers via a call center:

> If someone reaches out to MMA asking for a contract it would get directed to the advertiser who may manage the incoming call center, they would answer questions, they would collect some information and send the DocuSign contract to the client which the client would then review, decide if they do want to sign on, and if it signs on, then they would come to [MMA].

---

[6] *See* doc. 24, att. 13, p. 14, Marketing Services Agreement.

*Hatch v. Allstate Vehicle & Property Ins. Co.*, No 1:22-cv-03228-DDD-KK, Doc. 8, p. 101-02 (W.D. La. 12/19/22)(transcript of 12/13/22 Motion Hearing). An Order and Reasons issued by Magistrate Judge North of the Eastern District of Louisiana describes, among other things, the contractual relationship between MMA and Velawcity and satisfies this court that MMA had an arrangement whereby it agreed pre-pay Velawcity a fixed rate of $3,000 or $3,500 for each pre-screened and signed contingency-fee agreement Velawcity provided to MMA. *Franatovich v. Allied Trust Ins. Co.*, No. 2:22-cv-02552-LMA-MBN, Doc. 76, Order and Reasons (E.D. La. 3/16/23).

If MMA obtained its contingency fee contract with Mr. Bowie through a third-party marketing firm, Velawcity, it did so via a modern-day case runner that MMA pre-paid for client contacts. If that is the case, then MMA seeks to enforce a contingency fee contract between an attorney and client procured via a non-attorney case runner that may have engaged in the unauthorized practice of law. Any contracts arising out of such an illegal relationship would violate Louisiana law prohibiting payment in exchange for procuring clients and prohibiting the practice of law by those not licensed to do so. The resulting contingency fee agreement would be absolutely null and unenforceable.

    **2.    Even if valid, the contract would result in no recovery for MMA under Louisiana law governing the apportionment of fees among successive counsel.**

When a client with a contingency fee arrangement discharges one attorney and hires a successor, the Louisiana Supreme Court instructs courts to apply two slightly different analyses to apportion the fee among initial and successor counsel, depending on whether or not the first attorney was discharged for cause. *O'Rourke v. Cairns*, 683 So. 2d 697, 702-04 (La. 1996).

When the first attorney is dismissed without just cause, courts apply the rule announced in *Saucier v. Hayes Dairy Prods., Inc.*, whereby the court is instructed to divide among the lawyers

- 7 -

the highest ethical contingency fee to which the client agreed, apportioning it according to their contributions to the case as judged by prescribed factors:

> we conclude that only one contingency fee should be paid by the client, the amount of the fee to be determined according to the highest ethical contingency percentage to which the client contractually agreed in any of the contingency fee contracts which he executed. Further, that fee should in turn be allocated between or among the various attorneys involved in handling the claim in question, such fee apportionment to be on the basis of factors which are set forth in the Code of Professional Responsibility.

*Saucier*, 373 So. 2d 102, 118 (La. 1978), *on reh'g* (June 25, 1979). The factors by which the apportionment of the fee is made are now codified in the Louisiana Rules of Professional Conduct, at Rule 1.5(a).[7] *See Melancon v. Great S. Dredging, Inc.*, No. 12-2455, 2015 WL 3851585, at *2 (E.D. La. June 22, 2015).

When a client discharges an attorney *for cause*, the analysis includes an additional step that reduces the allocation to discharged counsel consistent with the "nature and gravity" of the conduct leading to his discharge:

> in cases of discharge with cause of an attorney retained on contingency, the trial court should determine the amount of the fee according to the *Saucier* rule, calculating the highest ethical contingency to which the client contractually agreed in any of the contingency fee contracts executed. The court should then allocate the fee between or among discharged and subsequent counsel based upon the *Saucier* factors. Thereafter, the court should consider the nature and gravity of the cause which contributed to the dismissal and reduce by a percentage amount the portion discharged counsel otherwise would receive after the Saucier allocation.

---

[7] The factors listed at Rule 1.5(a) are:
  (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
  (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
  (3) the fee customarily charged in the locality for similar legal services;
  (4) the amount involved and the results obtained;
  (5) the time limitations imposed by the client or by the circumstances;
  (6) the nature and length of the professional relationship with the client;
  (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
  (8) whether the fee is fixed or contingent.
La. Rules of Professional Conduct, Rule 1.5 (2018).

*O'Rourke*, 683 So. 2d at 704.  The *O'Rourke* court referred to this as a "modified *quantum meruit* analysis."  The goal of the rule announced in *Saucier* and *O'Rourke* is

> to confine client exposure to no more than one contingency fee in both with and without cause situations. Furthermore, it allows courts to properly analyze the intricacies which invariably arise in contingency fee litigation, while also taking into consideration the conduct of attorneys which mar the profession and client confidence by requiring dismissal for cause.

*Id*.

Sylvester Bowie argues, and the undersigned finds, that he dismissed MMA for cause.  In his affidavit and opposition briefing, Mr. Bowie recounts that after retaining MMA to represent him, via a process he cannot recall, he never spoke with an attorney from MMA about the retention agreement, the decision to file the lawsuit, or the appraisal process.  Doc. 31.  The court's review of file materials provided by MMA confirm little individualized interaction between Mr. Bowie and MMA.  Doc. 30.  The MMA activity log contains several notes reflecting Mr. Bowie's attempts to get in touch with MMA between August 2022 and February 2023, and the log contains a note that he complained about not getting meaningful updates.  *Id.*

Because Mr. Bowie dismissed MMA for cause,[8] to determine the fee owed to MMA in this or any other MMA case, a court would need to divide the "highest ethical" contingency fee to which plaintiff agreed among MMA and new counsel according to their contributions to the case, and then reduce the percentage of that fee owed to MMA by an amount consistent with the nature and gravity of MMA's misconduct that lead to it being discharged for cause.

---

[8] Mr. Bowie's attestations alone are sufficient to satisfy the court that Mr. Bowie dismissed MMA for cause due to his personal experience and knowledge of MMA's lapses from the professional standards prescribed by the Louisiana Rules of Professional Conduct.  Additionally, for the reasons stated herein, the undersigned would have no trouble finding that any MMA client could have dismissed MMA for cause.

Having reviewed the materials MMA submitted in response to the court's order [doc. 30], and having become aware of MMA's conduct through other hearings conducted by this and other courts, we find that the nature and gravity of MMA's misconduct in this matter entirely negates any percentage of the fee to which it might otherwise be entitled.[9]  In other words, MMA is entitled to 0% of any attorneys' fees collected in this matter because MMA has done Mr. Bowie more harm than good.

The court finds that MMA had little to no individualized contact with plaintiff and generally made minimal efforts on his behalf other than filing the lawsuit before the prescriptive deadline.  Assuming that the allegations of the lawsuit were sufficiently correct to state a valid claim for relief, MMA may have thereby provided non-negligible value to Mr. Bowie that could—in a different context—entitle MMA to some percentage of the attorney fee recovery in this matter.

That being said, the conduct that led to MMA's dismissal is so egregious that it more than offsets any value it provided to Mr. Bowie.  An attorney's representation must "advance [the] client's case" and have some "productive value to [the] client" in order for the attorney to recover any part of the applicable contingency fee. *See City of Alexandria v. Brown*, 740 F.3d 339, 351-52 (5th Cir. 2014).  Recently, the district judge conducted hearings regarding the still-active suspensions of MMA's former Louisiana attorneys. *In re: McClenny Moseley & Associates PLLC*,

---

[9] MMA's submissions include receipts supporting MMA's payment of $402 initial filing fee, a $50 additional fee associated with the costs of administering the review of MMA's stayed cases, and a receipt purporting to represent $100 in service fees payable to the Louisiana Secretary of State that does not specifically reverence this matter.  Doc. 30.  Although the file materials include a property inspection and estimate report, MMA states that it has "requested a copy" of the invoice associated with that report, MMA and asserts that it will be obligated to pay that unknown amount.  Doc. 30.  Of these, only the $402 initial filing fee is recoverable as a cost that MMA incurred for Mr. Bowie's benefit.  Given the findings herein regarding the invalidity of the contract between MMA and Bowie, recovery of these court costs alone is insufficient to support an intervention of right because it does not give MMA a direct interest in the sums recovered in this litigation. *See New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 466 (5th Cir. 1984) ("an economic interest alone is insufficient, as a legally protectable interest is required for intervention under Rule 24(a)(2)").  Regarding property inspection that MMA ordered on Mr. Bowie's behalf, the record contains no evidence that the estimate was ever paid, would ever be paid, or added any value to Mr. Bowie's claim.  In the absence of such evidence, the court affords it no value.

No. 3:23-mc-00062-JDC, doc. 35, Official Transcript (W.D. La. 8/11/23). Those attorneys confirmed that no attorney individually assessed the validity of hundreds of cases that MMA filed on the eve of the prescriptive deadline. *Id.*, doc. 35 at 25:9 - 30:10; 103:10 - 107:7. The less senior attorneys testified that they relied on the assertions of the managing attorneys that the information underlying the lawsuits was accurate. *Id.* In many cases, it was not.

In short, MMA has acted with so little regard for the rules of ethics and professional conduct, has been so reckless in the management of its affairs, and has so thoroughly weighed itself down with claims of dubious validity, that it deprived itself of the ability to provide any meaningful service to plaintiffs with legitimate claims. This is conduct that "mar[s] the profession and client confidence." *O'Rourke v. Cairns*, 95-3054 (La. 11/25/96), 683 So. 2d 697, 704. Considering the foregoing, we find that MMA would be entitled to no percentage of any attorneys' fee that Mr. Bowie's current counsel may recover.[10]

### III.
#### CONCLUSION

The undersigned recommends that the district court find that the contract underlying MMA's intervention is invalid under Louisiana law, and that even if valid, the contract would result in no recovery for MMA under Louisiana law governing the apportionment of fees among successive counsel. Accordingly, MMA's asserted interest is insufficient to support intervention under Fed. R. Civ. P. 24, and **IT IS RECOMMENDED** that MMA's Motion for Leave to File Intervention Complaint [doc. 22] be **DENIED**.

---

[10] We would not hesitate to make a similar finding with regard to any hurricane claim filed by MMA, unless MMA could show that the origin and handling of that claim differed significantly from the facts described herein.

Pursuant to 28 U.S.C. § 636(b)(1)(C) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days from receipt of this Report and Recommendation to file written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days of receipt shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1429–30 (5th Cir. 1996).

THUS DONE AND SIGNED in Chambers this 5th day of October, 2023.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE